**ALABAMA NAACP STATE CONFERENCE OF BRANCHES et al., Plaintiffs,**

**United States of America, Plaintiff and Amicus Curiae,**

**v.**

**Lurleen Burns WALLACE, Governor of the State of Alabama et al., Defendants,**

**John W. Gardner, as Secretary of Health, Education and Welfare of the United States, and Harold Howe II, as United States Commissioner of Education, Impleaded Defendants.**

**Civ. A. No. 2457-N.**

United States District Court
M. D. Alabama, N. D.

May 3, 1967.

Orzell Billingsley, Jr., Peter A. Hall, Oscar W. Adams, Jr., J. Mason Davis, Birmingham, Ala., David H. Hood, Jr., Bessemer, Ala., Robert L. Carter, New York City, and Frank D. Reeves, Washington, D. C., for plaintiffs.

Ben Hardeman, U. S. Atty., Montgomery, Ala., John Doar, Asst. Atty. Gen., and St. John Barrett, John M. Rosenberg, Brian Landsberg, Charles Quaintance and Reuben Ortenberg, Attys., Dept. of Justice, Washington, D. C., for the United States.

Hugh Maddox, Legal Adviser to the Governor, Montgomery, Ala., Goodwyn, Smith & Bowman, Montgomery, Ala., and John C. Satterfield, Yazoo City, Miss., for defendants.

James Taylor Hardin, Asst. Atty. Gen., Montgomery, Ala., for defendants Governor Wallace, Governor's Commission, Seymore Trammell and John Graves.

McQueen, Flowers & Ray, Tuscaloosa, Ala., for defendants Tuscaloosa City and County Boards of Education.

Ben Hardeman, U. S. Atty., Montgomery, Ala., John Doar, Asst. Atty. Gen., and St. John Barrett, Brian Landsberg, Reuben Ortenberg, Alanson Willcox and Albert T. Hamlin, Attys., Dept. of Justice, Washington, D. C., for impleaded defendants.

Before RIVES, Circuit Judge, and JOHNSON and PITTMAN, District Judges.

PER CURIAM:

On September 12, 1966, the Alabama NAACP Conference of Branches and certain individual plaintiffs instituted this action for a judgment declaring invalid Act No. 252 of the 1966 Special Session of the Alabama Legislature[1] and for an injunction against its implementation.

---

[1]. Act No. 252 declares that the Revised Statement of Policies for School Desegregation Plans under Title VI of the Civil Rights Act of 1964, better known as the "1966 Guidelines," issued by the United States Commissioner of Education in March, 1966, exceeds the authority granted by the Civil Rights Act, is unconstitutional, and interferes with the public duties of school officials in the State of Alabama. It provides that any assurance of compliance by local boards with the Guidelines is null and void, and that local boards have no authority to give any assurance of compliance. It further provides in certain contingencies

The complaint rests upon the due process and equal protection clauses of the fourteenth amendment and the impairment of contract clause of Article I, Section 10 of the United States Constitution. On November 22, 1966, the United States intervened as plaintiff and amicus curiae and filed a complaint against the Governor of Alabama and the Governor's Commission, in which it sought a declaratory judgment that Act No. 252 is invalid under Article VI, Clause 2 of the United States Constitution, the supremacy clause, because it interferes with the lawful federal enforcement of Title VI of the Civil Rights Act of 1964.[2] The defendants, in their answer to the complaints and in a third-party complaint against the Secretary of Health, Education and Welfare and the United States Commissioner of Education, asserted that the 1966 Guidelines, together with the Health, Education and Welfare regulations [3] issued pursuant to Title VI, exceed the authority conferred by Title VI and are repugnant to the Constitution. John W. Gardner, as Secretary of the Department of Health, Education and Welfare, and Harold Howe II, as Commissioner of Education, consented to being named as third-party defendants for the purpose of litigating those issues and filed full answers to the third-party complaint.

This action was heard on November 30, 1966, simultaneously with Lee v. Macon County Board of Education, 267 F.Supp. 458 (M.D.Ala.) The parties called 16 witnesses, submitted 40 depositions, and filed approximately 800 pages of briefs. February 3, 1967 was devoted to eight hours of oral argument. Broadly speaking, two issues are presented:

(1) Is the Alabama Act No. 252 repugnant to the United States Constitution?

(2) Are the 1966 Guidelines constitutionally valid and do they conform to the intent of the Civil Rights Act of 1964?

Subsequent developments in the law have reduced to a minimum the present necessity of court action on both issues.

## I. The Alabama Anti-guidelines Statute.

It is too clear for extended discussion that Act No. 252 of the 1966 Special Session of the Alabama Legislature has the effect of deterring and interfering with efforts of local school boards in Alabama to give and abide by assurances that they will administer federal assistance programs in compliance with section 601 of the Civil Rights Act of 1964, is in conflict with Title VI of that Act, and hence is unconstitutional and for that reason invalid under the supremacy clause.[4]

Our holding that Alabama Act No. 252 is invalid under the supremacy clause would be the same even in the event of a judicial holding that the 1966 Guidelines are invalid. The reason is that we think that a State may not, except through court action reviewable by the Supreme Court of the United States, undertake to declare null and void any action of a federal department or agency to implement or effectuate a federal statute. This is particularly true where such declaration is a part of the State's effort to obstruct or interfere with the operation of such statute. Such action by a State would be taking the law into its own hands and would inevitably conflict with the supremacy clause.

In Lee v. Macon County Board of Education, supra, without relying upon either the Guidelines or any action under the Alabama anti-guidelines statute, this district court has ordered the

that the State shall make up or replace any loss to a local board to which federal assistance is denied or deferred. Acts of Alabama, 1966, Sp.Sess., p. 372.

2. Pub.L. 88–352, Tit. VI, §§ 601–605, July 2, 1964, 78 Stat. 252, 253, 42 U.S.C.A. §§ 2000d to 2000d–4.

3. 45 C.F.R. 80.

4. See United States v. Allegheny County, 1944, 322 U.S. 174, 183, 64 S.Ct. 908, 88 L.Ed. 1209; United States v. Georgia Public Service Commission, 1963, 371 U.S. 285, 293, 83 S.Ct. 397, 9 L.Ed.2d 317.

public schools and colleges in Alabama not already desegregated to be completely desegregated as of the beginning of the next school year. At this time it appears that we can hopefully anticipate good faith compliance with that injunction and decree. There is therefore no present necessity to issue an injunction or to do more than formally declare the invalidity of said Act No. 252. The court expressly reserves jurisdiction with respect to said Act to issue such writs or take such action as may appear necessary or appropriate in the future.

## II. *The 1966 Guidelines.*

After extensive briefing and full argument, the Court of Appeals for the Fifth Circuit in United States v. Jefferson County Board of Education, 372 F.2d 836, decided December 29, 1966, rehearing decided en banc March 29, 1967, 380 F.2d 385 has held that the 1966 HEW Guidelines are "within the scope of the congressional and executive policies embodied in the Civil Rights Act of 1964." (372 F.2d p. 857.) Again the Court said: " * * * we hold that HEW's standards are substantially the same as this Court's standards. They are required by the Constitution and, as we construe them, are within the scope of the Civil Rights Act of 1964." (p. 848.) On en banc rehearing, the Court reiterated: "These Guidelines and our decree are within the decisions of this Court, comply with the letter and spirit of the Civil Rights Act of 1964, and meet the requirements of the United States Constitution." (P. 390 of 380 F.2d.)

These holdings were made deliberately and advisedly in the face of contentions that the validity of the 1966 Guidelines was not in issue. The Court ruled otherwise, holding that the courts should rely heavily upon the Guidelines and should model their standards after those promulgated by the executive (372 F.2d p. 852), and that "these Guidelines establish minimum standards clearly applicable to disestablishing state-sanctioned segregation." (Opinion on en banc rehearing p. 390 of 380 F.2d.)

■ It is the clear duty of this district court to follow the decision of our Court of Appeals. All of the cases which have spoken on the subject so hold.

"The court of three judges is not a different court from the District Court, but is the District Court composed of two additional judges sitting with the single District Judge before whom the application for injunction has been made. 28 U.S.C. § 2284(1)."

Jacobs v. Tawes, 4 Cir. 1957, 250 F.2d 611, 614.

"This [three-judge district] court's jurisdiction is that of a District Court and it is bound to follow unreversed and unmodified decision by the Circuit Court of Appeals of the circuit."

Sunshine Anthracite Coal Co. v. Adkins, E.D.Ark.1940, 31 F.Supp. 125, 127, aff'd, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940).

In Willis v. Pickrick Restaurant, N.D. Ga.1964, 231 F.Supp. 396, 400, it was said that the judgments of the Court of Appeals for the Fifth Circuit are binding on the three-judge district court. See also 1B Moore's Federal Practice ¶ 0.402, p. 62.

■ Even if we were not bound by the decision of the Court of Appeals, the decision of that Court en banc is entitled to such great deference and respect that we would be unwilling to depart from it. For us to do so could result only in confusion. As in all cases, the parties in the Fifth Circuit case and here have their appellate remedies. Upon the basis of the Fifth Circuit decision, as it now stands, we hold that the 1966 Guidelines are constitutionally valid and conform to the intent of the Civil Rights Act of 1964.

## III. *Ancillary Declarations and Observations.*

The extensive development of the issues in this case, including many instances of actual application of the Guidelines, does induce us to make a few ancillary declarations and observations concerning the Guidelines. We hope that

these declarations may aid in the implementation of our decisions in Lee v. Macon County Board of Education, supra, and in the present case.

 1. The Guidelines, as their title indicates, are simply a statement of policies for school desegregation plans by the Office of Education, U. S. Department of Health, Education and Welfare. They are not an exercise of rule-making power and hence do not have the "status of law." Any department or agency action terminating or refusing to grant or to continue financial assistance is subject to plenary judicial review. In the absence of judicial review, the school authorities may and should respect the Guidelines as a reliable guide to what the Department's enforcement action should be.

 2. As was recognized in Brown v. Board of Education, 1954, 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873, 38 A.L.R.2d 1180: "Today, education is perhaps the most important function of state and local governments." That function remains primarily the responsibility of state and local authorities and can be regulated by the Department of Health, Education and Welfare only to the extent appropriate to effectuate the provisions of section 601 of the Civil Rights Act of 1964:

"Sec. 601. No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

The objective of the statute, as clearly and succinctly stated in that section, is not compulsory mixing of the races but freedom from discrimination. The statute does not require integration as an end in itself, nor is that required by the fourteenth amendment. Of course, some compulsory association of the races is necessary for the purpose of desegregating the schools, but that is limited to such as is appropriate for eliminating a dual structure of separate schools for students of different races and removing every vestige of legal discrimination,[5] an expression which includes all state-imposed or state-sanctioned discrimination on the ground of race, color, or national origin. The statutory requirement is based upon the constitutional guarantee of equal protection of the laws as enforced in Lee v. Macon County Board of Education, supra, where we held all state-sanctioned segregation of the races in the public schools to be unconstitutional. The actual decision of the Court of Appeals in United States v. Jefferson County Board of Education, supra, is to like effect and does not call for any further or more complete mixing or balancing of the races than may be appropriate for the purpose of correcting discrimination. As was held by the en banc Court on rehearing:

"The percentages referred to in the Guidelines and in this Court's decree are simply a rough rule of thumb for measuring the effectiveness of freedom of choice as a useful tool. The percentages are not a method for setting quotas or striking a balance. If the plan is ineffective, longer on promises than performance, the school officials charged with initiating and administering a unitary system have not met the constitutional requirements of the Fourteenth Amendment; they should try other tools."

 3. The objective of the Civil Rights Act of 1964 is to protect persons from discrimination on account of their race, color, or national origin. The philosophy of the Act is to induce as much voluntary compliance as possible. No arbitrary power is vested in any federal department or agency. The Act evinces a clear intention to limit the power of any federal department or agency and to require its action to be pursuant to definite rules, regulations or guides of general applicability. The main purpose of that requirement is that

5. See Brown v. Board of Education, 1954, 347 U.S. 483, 491, 74 S.Ct. 686.

state and local authorities may be able to understand in advance of enforcement the rules, regulations and enforcement policies and, in the exercise of their primary functions and responsibilities, to voluntarily conform their actions to rules of law. The purpose of the Guidelines is to "provide assistance and guidance to recipients to help them comply voluntarily." [6] To fulfill that purpose it is essential that the Guidelines be explicit, certain, and definite.

4. The provision in the Assurance of Compliance form HEW–441–13 beginning "The Applicant also agrees that it will comply with any amendment of the Revised Statement * * *" should be construed as referring to any valid and lawful amendment which conforms to the intent of the Civil Rights Act of 1964. Any such assurance on the part of an applicant shall not be construed as requiring more than the Civil Rights Act of 1964 requires nor so as to preclude or prejudice the applicant in any judicial review involving any such amendment or any other provision of the Guidelines.

5. A Regulation of the Department of Health, Education and Welfare approved by the President on December 3, 1964, and which therefore has the force and effect of law, 45 C.F.R. 80.4(c), requires that with respect to elementary or secondary school systems, "assurances of compliance" as prerequisites to obtaining federal financial assistance "shall be deemed to be satisfied" if such school system is subject to a final order of a court of the United States for the desegregation of such school system and gives assurance that it will comply with such order. As courts attempt to cooperate with executive and legislative policies, so too the Department must respect a court order for the desegregation of a school or school system.

The court retains jurisdiction of each of the parties and their successors in office and of this case for such further proceedings, orders and decrees as may hereafter appear appropriate.