Kenneth ADAMS et al.,

v.

Elliot L. RICHARDSON, Individually
and as
Secretary of the Department of Health,
Education and Welfare, et al.,
Appellants.

No. 73-1273.

United States Court of Appeals,
District of Columbia Circuit.

Argued En Banc April 16, 1973.

Decided June 12, 1973.

Leonard Schaitman, Atty., Dept. of Justice, with whom Harold H. Titus, Jr., U. S. Atty., and Eloise E. Davies, Atty., Dept. of Justice, were on the brief, for appellants. Alexandra P. Buek, Atty., Dept. of Health, Education and Welfare, also entered an appearance for appellants.

Elliott C. Lichtman, Washington, D. C., with whom Joseph L. Rauh, Jr., John Silard, Washington, D. C., and James M. Nabrit III, New York City, were on the brief, for appellees.

Herbert O. Reid, Sr., and J. Clay Smith, Jr., Washington, D. C., filed a brief on behalf of the National Association For Equal Opportunity In Higher Education as amicus curiae.

Before BAZELON, Chief Judge, and WRIGHT, McGOWAN, TAMM, LEVENTHAL, ROBINSON, MacKINNON,* ROBB and WILKEY, Circuit Judges sitting en banc.

PER CURIAM:

This action was brought to secure declaratory and injunctive relief against the Secretary of Health, Education, and

* Judge MacKinnon, Circuit Judge, did not participate in the decision of this case.

Welfare, and the Director of HEW's Office of Civil Rights. Appellees, certain black students, citizens, and taxpayers, allege in their complaint that appellants have been derelict in their duty to enforce Title VI of the Civil Rights Act of 1964 because they have not taken appropriate action to end segregation in public educational institutions receiving federal funds.[1] The matter was before the District Court on cross motions for summary judgment, on an extensive record consisting of depositions and documentary evidence.

The District Court found appellants' performance to fall below that required of them under Title VI,[2] and ordered them to (1) institute compliance procedures against ten state-operated systems of higher education, (2) commence enforcement proceedings against seventy-four secondary and primary school districts found either to have reneged on previously approved desegregation plans or to be otherwise out of compliance with Title VI, (3) commence enforcement proceedings against forty-two districts previously deemed by HEW to be in presumptive violation of the Supreme Court's ruling in Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971), (4) demand of eighty-five other secondary and primary districts an explanation of racial disproportion in apparent violation of *Swann*, (5) implement an enforcement program to secure Title VI compliance with respect to vocational and special schools, (6) monitor all school districts under court desegregation orders to the extent that HEW resources permit, and (7) make periodic reports to appellees on their activities in each of the above areas.[3]

We modify the injunction concerning higher education and affirm the remainder of the order.

I

Appellants insist that the enforcement of Title VI is committed to agency discretion, and that review of such action is therefore not within the jurisdiction of the courts. But the agency discretion exception to the general rule that agency action is reviewable under the Administrative Procedure Act, 5 U.S.C. §§ 701–02, is a narrow one, and

1. Section 601 of the statute (42 U.S.C. § 2000d) provides as follows:

    No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

    Section 602 authorizes and directs each federal agency empowered to expand federal funds for aid to education to effectuate the commands of Section 601 by appropriate regulations. Compliance may be effected by cutting off the flow of federal funds after opportunity for hearing has been afforded to the offending party, or by any other means authorized by law. The imposition of these sanctions are to be preceded in every case by voluntary efforts to effect compliance; and prior notice is to be given to the Congress in each case where the agency proposes to terminate funds.

    By regulation issued under the foregoing statutory authority, 45 C.F.R. 80.8 (1972), the procedure for effecting compliance is described as fund termination or "any other means authorized by law." The regulation goes on to say that such other means may include a reference to the Department of Justice with a recommendation that appropriate proceedings be brought by it. We are not asked to decide on this appeal whether reference of cases to the Justice Department will in all cases completely satisfy HEW's obligations under the statute.

2. The District Court issued a Memorandum Opinion which embodied extensive findings of fact and conclusions of law. After amending the Opinion in one respect, the court thereafter entered a Declaratory Judgment and Injunction Order which largely restated its earlier findings and conclusions in relation to the relief granted. 356 F.Supp. 92 (1973).

3. The District Court found that HEW lacks authority to recapture funds already disbursed to institutions not in compliance or to terminate previously authorized funds during pendency of enforcement proceedings. This issue has not been pursued on appeal.

is only "applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.' S.Rep.No. 752, 79th Cong., 1st Sess., 26 (1945)." Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971). The terms of Title VI are not so broad as to preclude judicial review. A substantial and authoritative body of case law provides the criteria by which noncompliance can be determined, and the statute indicates with precision the measures available to enforce the Act.

Appellants rely almost entirely on cases in which courts have declined to disturb the exercise of prosecutorial discretion by the Attorney General or by United States Attorneys. Georgia v. Mitchell, 146 U.S.App.D.C. 270, 450 F.2d 1317 (1971); Peek v. Mitchell, 419 F.2d 575 (6th Cir. 1970); Powell v. Katzenbach, 123 U.S.App.D.C. 250, 359 F.2d 234 (1965); Moses v. Katzenbach, 342 F.2d 931 (D.C.Cir.1965). Those cases do not support a claim to *absolute* discretion and are, in any event, distinguishable from the case at bar. Title VI not only requires the agency to enforce the Act, but also sets forth specific enforcement procedures. The absence of similar specific legislation requiring particular action by the Attorney General was one factor upon which this court relied in Powell v. Katzenbach, 123 U.S.App.D.C. 250, 359 F.2d 234, 235 (1965), to uphold the exercise of discretion in that case.

More significantly, this suit is not brought to challenge HEW's decisions with regard to a few school districts in the course of a generally effective enforcement program. To the contrary, appellants allege that HEW has consciously and expressly adopted a general policy which is in effect an abdication of its statutory duty. We are asked to interpret the statute and determine whether HEW has correctly construed its enforcement obligations.

A final important factor distinguishing this case from the prosecutorial discretion cases cited by HEW is the nature of the relationship between the agency and the institutions in question. HEW is actively supplying segregated institutions with federal funds, contrary to the expressed purposes of Congress. It is one thing to say the Justice Department lacks the resources necessary to locate and prosecute every civil rights violator; it is quite another to say HEW may affirmatively continue to channel federal funds to defaulting schools. The anomaly of this latter assertion fully supports the conclusion that Congress's clear statement of an affirmative enforcement duty should not be discounted.

Appellants attempt to avoid the force of this argument by saying that, although enforcement is required, the means of enforcement is a matter of absolute agency discretion, and that they have chosen to seek voluntary compliance in most cases. This position is untenable in light of the plain language of the statute:

> Each Federal department and agency which is empowered to extend Federal financial assistance to any program or activity . . . is authorized and directed to effectuate the provisions of section 2000d of this title with respect to such program or activity by issuing rules, regulations, or orders of general applicability . . . . Compliance with any requirement adopted pursuant to this section may be effected (1) by the termination of or refusal to grant or to continue assistance under such program or activity to any recipient as to whom there has been an express finding on the record, after opportunity for hearing, of a failure to comply with such requirement . . . or (2) by any other means authorized by law: *Provided, however,* That no such action shall be taken until the department or agency concerned has advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means. . . . 42 U.S.C. § 2000d–1.

[3] The Act ▮ forth two alternative courses of action by which enforcement may be effected. In order to avoid unnecessary invocation of formal enforcement procedures, it includes the proviso that the institution must first be notified and given a chance to comply voluntarily. Although the Act does not provide a specific limit to the time period within which voluntary compliance may be sought, it is clear that a request for voluntary compliance, if not followed by responsive action on the part of the institution within a reasonable time, does not relieve the agency of the responsibility to enforce Title VI by one of the two alternative means contemplated by the statute. A consistent failure to do so is a dereliction of duty reviewable in the courts.[4]

## II

▮ Although both parties were content to have this case disposed of in the District Court on cross motions for summary judgment, appellants now contend that the case was not one properly to be resolved in that posture. In the District Court, HEW, although denying the contention that it had disregarded its statutory duties, made no claim or showing of disputed material facts relevant to that issue and requiring resolution by trial. Instead, it argued that agency enforcement of Title VI is completely discretionary, and it presses that contention here. That is a legal question involving statutory construction which can be resolved on the record before us. It is true that data concerning the present status of the various school systems is constantly changing, and the record may not identify accurately systems which are currently in compliance. For example, the District Court found, on the basis of the record before it, that seventy-four districts had reneged on previously approved desegregation plans or were otherwise out of compliance. HEW now contends that thirty-nine of these districts were so classified only because of agency error, and that fourteen others are, for various reasons, no longer properly included in that group.

We believe that problems of that nature can be resolved without trial. The District Court went out of its way to note on the first page of its order that it was to be read and interpreted with the staleness of the record in mind. This suggests that, if HEW can demonstrate to the District Court that certain districts are presently in compliance, either interpretation or modification of the order can prevent unnecessary enforcement proceedings. Insofar as the order involves districts as to which HEW lacks sufficient information to determine their current status, an initial purpose of the enforcement proceeding is to obtain that information. Since there was reason in the past to believe that each of these systems was not in compliance with the law, it is not unduly burdensome to require that they now participate in a hearing to determine their present status.

▮ The injunction does not direct the termination of any funds, nor can any funds be terminated prior to a determination of noncompliance. In this suit against the agency, in contrast to actions brought against individual school systems, our purpose, and the purpose of the District Court order as we understand it, is not to resolve particular questions of compliance or noncompliance.[5] It is, rather, to assure that

---

4. HEW's decision to rely primarily upon voluntary compliance is particularly significant in view of the admitted effectiveness of fund termination proceedings in the past to achieve the Congressional objective.

5. Far from dictating the final result with regard to any of these districts, the order merely requires initiation of a process which, excepting contemptuous conduct, will then pass beyond the District Court's continuing control and supervision. The school districts must be notified of the purpose to terminate and be given a hearing. 45 C.F.R. § 80.8(c). At the hearing conducted by a hearing examiner, the district enjoys the usual protections

the agency properly construes its statutory obligations, and that the policies it adopts and implements are consistent with those duties and not a negation of them.[6]

## III

With this broad purpose in mind, we turn to the substance of the order. We have examined the record in relation to the findings of fact made by the District Court, and can only conclude that they are unassailable. Rule 52(a), Fed.R.Civ.P. Accordingly, with the exception of the higher education problem discussed below, the order must be, and is, affirmed.[7]

In the field of higher education, the District Court found that between January, 1969, and February, 1970, HEW concluded that ten states[8] were operating segregated systems of higher education in violation of Title VI. HEW then directed each state to submit a desegregation plan within 120 days. Five ignored the request, and five submitted unacceptable plans, as to which HEW has not made any formal comments in the intervening years. Nevertheless, HEW has neither instituted any enforcement proceedings itself nor referred any of the cases to the Department of Justice. Although noting HEW's representations that negotiations with the 10 states are still pending, on the basis of these findings the district judge required institution of compliance proceedings within 120 days.

We agree with the District Court's conclusion that HEW may not neglect this area of its responsibility. However, we are also mindful that desegregation problems in colleges and universities differ widely from those in elementary and secondary schools, and that HEW admittedly lacks experience in dealing with them. It has not yet formulated guidelines for desegregating state-wide systems of higher learning,[9] nor has it commented formally upon the desegregation plans of the five states which have submitted them. As regrettable as these revelations are, the stark truth of the matter is that HEW must carefully assess the significance of a variety of new factors as it moves into an unaccustomed area. None of these factors justifies a failure to comply with a Congressional mandate; they may, however, warrant a more deliberate opportunity to identify and accommodate them.

The problem of integrating higher education must be dealt with on a state-wide rather than a school-by-school basis.[10] Perhaps the most serious prob-

of an adjudicatory proceeding, including the right to counsel, the right to introduce all relevant evidence, and the right to cross-examine witnesses. The examiner's decision can be appealed to a reviewing authority, then to the Secretary, and finally to the courts. 45 C.F.R. §§ 80.-10, 80.11; 42 U.S.C. § 2000d–2. 28 U.S.C. § 1391 gives the school districts and states petitioning for such judicial review a choice of venue, including the judicial district in which the plaintiff resides.

6. This action is consistent with the nature of judicial review exercised in other situations. *See* Burlington Truck Lines v. United States, 371 U.S. 156, 165–169, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962); Board of Public Instruction of Taylor County v. Finch, 414 F.2d 1068, 1073–1075 (5th Cir. 1969); Elgin Joliet & Eastern R.R. Co. v. Benj. Harris & Co., 245 F.Supp. 467, 472 (N.D.Ill.1965).

7. HEW also challenges the District Court's statement that appellees may claim attorney's fees under Section 718 of Public Law 92–318, 20 U.S.C. § 1617. No fees have yet been awarded, nor does it appear that this question arose in the trial court in such way as to have resulted in an adversary presentation. It is appropriate to be left for meaningful resolution in the first instance by the District Court if and when fee applications are made to it.

8. Louisiana, Mississippi, Oklahoma, North Carolina, Florida, Arkansas, Pennsylvania, Georgia, Maryland and Virginia are the states in question.

9. See 45 C.F.R. § 80.6(a) (1972); Alabama NAACP State Conference of Branches v. Wallace, 269 F.Supp. 346, 351–352 (M.D.Ala.1967).

10. It is important to note that we are not here discussing discriminatory admissions policies of individual institutions. To the

lem in this area is the lack of state-wide planning to provide more and better trained minority group doctors, lawyers, engineers and other professionals. A predicate for minority access to quality post-graduate programs is a viable, co-ordinated state-wide higher education policy that takes into account the special problems of minority students and of Black colleges. As *amicus* points out, these Black institutions currently fulfill a crucial need and will continue to play an important role in Black higher education.[11]

Since some years have elapsed since the initial call was made by HEW for the submission of state higher education plans, we think such a cycle may best be begun by requiring HEW to call upon the states in question—those that have submitted plans earlier as well as those who have not—to submit plans within 120 days, and thereafter to be in active communication with those states whose plans are not acceptable. If an acceptable plan has not been arrived at within an additional period of 180 days, HEW must initiate compliance procedures. As judges well know, the setting down of a case for hearing does not automatically terminate voluntary negotiations nor eliminate the possibility of agreement. The need to prepare for actual hearing frequently causes litigants to focus on their weaknesses as well as their desires.

Some additional comment is desirable with respect to school districts under a court order to desegregate. The District Court, in giving injunctive relief in this context, noted that (1) Congress has by statute declared that compliance by a school district with a court order to desegregate is to be deemed compliance with Title VI, (2) HEW has no obligation to effectuate Title VI until the court issuing such order has made a finding of non-compliance, and (3) the responsibility for compliance rests upon the court. The District Court also declared, however, that HEW has a role to play in that process; and it directed appellants, "to the extent that their resources permit," to monitor court-order districts and to bring their findings to the attention of the court concerned.[12]

■ Although appellants urge in their brief to this court that "it is difficult to find any legal basis for the imposition upon HEW of a monitoring duty in court-order districts," this injunctive order appears to have been responsive to testimony in the record on behalf of HEW itself. That testimony was that HEW recognized its right and authority, as the responsible disbursing agent of federal funds subject to the standards of compliance in districts under court order; that it was handicapped in this respect by inadequate personnel resources, having only some 38 or 40 inspectors which it thought could be more efficiently used in monitoring compliance with voluntary plans filed with HEW; and that, despite these limitations, whenever a court requested it to monitor compliance with an order issued by that court, it made a special effort to respond and had done so on a number of occasions.

extent that such practices are discovered, immediate corrective action is required, but we do not understand HEW to dispute that point. This controversy concerns the more complex problem of system-wide racial imbalance.

11. The brief is that filed by the National Association for Equal Opportunity in Higher Education, a voluntary association of the presidents of 110 predominantly Negro colleges and universities, both state-supported and private.

12. *See* Lee v. Macon County Board of Education, 270 F.Supp. 859, 866 (M.D.Ala.,

1967). There a three-judge court enjoined HEW from cutting off federal funds from a district which the court had not as yet found to be in violation of a court-ordered plan. The court asserted that the proper course of action was for HEW to exercise its right to inquire into the state of compliance with the court's order, to bring any evidence of non-compliance found by it to the attention of the court, and to withhold suspension of federal funds until the court gave its approval.

We do not understand the District Court's order to require close surveillance by HEW of all court-order districts, nor that HEW shall be accountable for more than the resources available to it from time to time permit in the good-faith performance of its general obligation not to allow federal funds to be supportive of illegal discrimination. Presumably that good faith would call for a special effort in those instances where significant non-compliance is brought to its attention. So viewed, we do not find this aspect of the District Court's injunction to be unwarranted.

The injunction issued by the District Court relating to state-operated systems of higher education is modified as set forth above. In all other respects, the judgment appealed from is

Affirmed.