Darryl W. **BROWN** et al., Plaintiffs,

v.

Caspar W. **WEINBERGER** et al., Defendants.

Civ. A. No. 75–1068.

United States District Court,
District of Columbia.

July 20, 1976.

---

Joseph L. Rauh, Jr., John Silard, Elliott C. Lichtman, Washington, D. C., for the plaintiffs.

Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., for District of Columbia, Robert N. Ford and Roger Spaeder, Asst. U. S. Attys., for District of Columbia, Robert M. Rader, Atty., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

SIRICA, District Judge.

Plaintiffs are presently before the Court on motions to certify this case as a class action and for a preliminary injunction, or in the alternative for partial summary judgment. Defendants oppose both motions of the plaintiffs and have responded to them both by written oppositions and upon oral hearing in open court.

### PLAINTIFFS' CLAIMS

Plaintiffs are eighteen public school students who attend schools which currently receive federal financial assistance from the Department of Health, Education and Welfare (hereafter "HEW"). Plaintiffs, suing through their parents, allege that public schools in thirty-three Northern and Western states continue to receive federal financial aid while they discriminate on the basis of race and national origin in violation of Title VI of the Civil Rights Act and the Fifth and Fourteenth Amendments to the Constitution.

Plaintiffs contend that defendants have defaulted in their duty to enforce Title VI by failing to initiate investigations of possible acts of discrimination, by unlawfully delaying investigations which have been commenced, and by refusing to prosecute fund cut-off proceedings against schools which have been determined to be discriminating and which have not voluntarily ceased such actions and complied with the Department of Health, Education and Welfare's recommendations. By failing to do these things, plaintiffs claim that the defendants have ignored their affirmative statutory duty under Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d et seq. (1970), to enforce equal rights in the area of public school education by continuing to actively supply segregated schools with federal funds, contrary to the expressed intent of Congress.

In support of these claims, plaintiffs contend that the Secretary of HEW and the Director of the Office of Civil Rights of HEW (hereafter "OCR") have renounced their statutory duty to assure that, in student and faculty assignments, no segregation on the basis of race or national origin is practiced in public school systems receiving HEW financial assistance in thirty-three Northern and Western states.

More specifically, plaintiffs charge that defendants have defaulted in four ways:

1. by their failure to initiate investigations of discrimination in school districts where racial imbalance gives cause to be-

lieve that certain Northern-Western school districts are violating Title VI;

2. by their failure to act expeditiously in completing their investigations of North-ern-Western school districts' alleged viola-tions of Title VI which have been initiated;

3. by their failure to commence enforce-ment proceedings in certain cases in which HEW has found that particular Northern-Western school districts are violating Title VI and in which voluntary compliances have not been achieved over a substantial period of time; and

4. by their failure to commence enforce-ment proceedings against certain Northern-Western school districts after HEW finally determined that they were ineligible for assistance under the Emergency School Aid Act (hereafter "ESAA") because they were practicing segregation and discrimination.

In the appendix to their Verified Second Amended Complaint, filed October 24, 1975, plaintiffs list a number of school districts which, they contend, fall under one of these four categories.

## MOTION TO CERTIFY AS A CLASS ACTION

██ The Court is of the opinion that the named plaintiffs may properly bring this action on behalf of themselves and others similarly situated. More specifically, it appears that certification of this case as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate since: (1) there is a common question of law arising out of a common fact situation; (2) the vast number of interested persons makes joinder impracticable; (3) there are no apparent substantial conflicts of interest or legal positions to be advanced within the class; (4) it is quite evident that the inter-ests of the members of the class will be adequately represented; and (5) the relief sought, if obtained by the class, will be a good deal more than something merely ap-propriate. *Potts v. Flax,* 313 F.2d 284 (5 Cir. 1963); *see also, Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948).

██ Defendants object to certification as a class action on several grounds, one of which is that they assert that notice to all members of the class would be required and that such notice could not adequately be given. This contention is without merit since, in this circuit, it is settled law that the notice requirement is inapplicable to a Rule 23(b)(2) class action. *Larionoff v. United States,* 533 F.2d 1167 (D.C.Cir. 1976).

Therefore, plaintiffs' motion for certifica-tion of this suit as a class action under Rule 23(b)(2) is granted.

## MOTION FOR A PRELIMINARY IN-JUNCTION OR, IN THE ALTERNA-TIVE, FOR PARTIAL SUMMARY JUDGMENT

The second motion presently before the Court is the plaintiffs' motion for a prelimi-nary injunction or, in the alternative, for partial summary judgment.

Plaintiffs contend that there are no ma-terial facts in dispute and that they are entitled to summary judgment as a matter of law. Defendants oppose this position arguing that there are material facts in dispute, citing the affidavits they have sub-mitted of Mr. Peter E. Holmes, Director, Office of Civil Rights to support their oppo-sition. However, in this Court's view, these affidavits merely serve to up-date the data and information used by the plaintiffs in their complaint to reflect the more recent status of investigations, compliance activity and handling of cases in many of the school districts cited by the plaintiffs.

██ The Court acknowledges that this opinion must be read with the staleness of the record in mind. Hopefully progress is being made, investigations are concluding and compliances are being sought pending the outcome of this litigation. It is admit-tedly difficult for the Court and the counsel for both sides to keep pace with the changes which might occur in each individual school district of the fifty-eight cited by the plain-tiffs as in issue here. This fact, of itself, does not render the relief requested una-vailable. *Adams v. Richardson,* 156 U.S. App.D.C. 267, 480 F.2d 1159, 1163 (1973).

After a thorough review of the record before the Court, plaintiffs' memorandum in support of their motion and defendants' opposition thereto, it is the opinion of the Court that the defendants, in certain instances complained of by the plaintiffs, have failed to fulfill their duties and obligations under Title VI and the plaintiffs are entitled to partial summary judgment. The following are the specific findings of fact and conclusions of law.

## I. FINDINGS OF FACT

1. Between May 1968 and January 1975, HEW initiated investigations of 14 Northern-Western school districts under Title VI which have not been brought to a conclusion and which still remain pending as ongoing investigations. (Appendix A). These investigations range from a period of one and one-half to eight years in duration.

2. These fourteen school districts under investigation have received and continue to receive substantial federal assistance from HEW.

3. To date HEW has initiated no enforcement proceedings against these fourteen districts, nor has HEW notified them whether or not they are in compliance with Title VI.

4. Between May 1968 and January 1975 HEW initiated investigations of 26 Northern-Western school districts under Title VI, with investigations pending as long as seven years in duration before being concluded. (Appendix B).

5. Between March of 1973 and March 1975, these twenty-six school districts received notification that they were in violation of Title VI.

6. These twenty-six school districts have received and continue to receive substantial federal assistance from HEW.

7. To date HEW has not achieved voluntary compliance with Title VI in these districts nor has HEW initiated enforcement proceedings against these districts.

8. In the Spring of 1973, HEW declared that six Northern-Western school districts were ineligible for assistance under the Emergency School Aid Act of 1972 (ESAA) either because of their assignment of faculties on the basis of race or due to substantial civil rights violations. (Appendix C).

9. The six schools declared by HEW to be ineligible for ESAA assistance have received and continue to receive substantial federal assistance from HEW under other aid statutes.

10. In September and October of 1975, HEW notified five of these six districts that, in addition to the civil rights violations which rendered them ineligible for ESAA assistance, they were in violation of Title VI. An investigation into whether the sixth school district, Los Angeles, California, is in violation of Title VI is still pending.

11. HEW, to date, has failed to secure a cessation of the discriminatory practices of these school districts through voluntary compliance and has not initiated any Title VI enforcement proceedings against these districts.

12. Of the eighteen remaining school districts cited by the plaintiffs in their Verified Second Amended Complaint, none is any longer at issue here since they have been resolved either by the initiation of enforcement proceedings, by an investigative finding of compliance, by the implementation of court ordered desegregation, by the institution of civil litigation, or by the acceptance and monitoring by HEW of a voluntary compliance plan.

## II. CONCLUSIONS OF LAW

The issue presently before the Court is whether, by failing to conclude protracted investigations of certain Northern-Western school districts to determine whether they are in compliance with Title VI and by failing to initiate enforcement proceedings against certain other Northern-Western school districts, defendants have failed to fulfill their statutory duties and responsibilities under Title VI of the Civil Rights Act of 1964, as amended.

This Court is of the opinion that the defendants have failed in their duties under both Title VI and their own regulations.

Title VI of the Civil Rights Act, section 2000d, provides that:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

Further, Congress directed that federal agencies, such as HEW, are to effectuate the provisions of § 2000d by stating in § 2000d–1 that:

Each Federal department and agency which is empowered to extend Federal financial assistance to any program or activity, by way of grant, loan or contract . . . is authorized and directed to effectuate the provisions of section 2000d of this title with respect to such program or activity by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance in connection with which the action is taken. . . . Compliance with any requirement adopted pursuant to this section may be effected (1) by the termination or the refusal to grant or to continue assistance under such program or activity to any recipient as to whom there has been an express finding on the record, after opportunity for a hearing, of a failure to comply with such requirement, . . . or (2) by any other means authorized by law: *Provided, however,* That no such action shall be taken until the department or agency concerned has advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means. . . . (42 U.S.C. § 2000d–1).

In accordance with this section of the statute, HEW has promulgated regulations for effectuating Title VI and for enforcing nondiscrimination under programs receiving Federal financial assistance through HEW at 45 CFR § 80.1 *et seq.* More specifically, for purposes of this case, the sections of the regulations dealing with investigations and the resolution of non-compliances read as follows:

(c) *Investigations.* The responsible Department official or his designee will make a *prompt* investigation whenever a compliance review, report, complaint, or any other information indicates a possible failure to comply with this part . . . . .

(d) *Resolution of Matters.* (1) If an investigation pursuant to paragraph (c) of this section indicates a failure to comply with this part, the responsible Department official or his designee will so inform the recipient and the matter will be resolved by informal means whenever possible. If it has been determined that the matter cannot be resolved by informal means, action will be taken as provided for in § 80.8.[1] (Emphasis added) (45 CFR §§ 80.7(c) and (d)).

These statutes and regulations clearly state the intent of Congress to do away with discrimination in any program or activity receiving Federal funds and the procedures outlined in the regulations specifically detail the duties and responsibilities of HEW in this regard.

## A. SCHOOL DISTRICTS WITH INVESTIGATIONS PENDING.

By no interpretation of the regulations or stretch of the imagination can the investigations still pending in the fourteen school districts listed in Appendix A be considered "prompt" within the meaning of 45 CFR § 80.7(c). The substantial delays of from one and one-half to eight years without bringing these investigations to conclusions, during which time the school districts involved have continued to receive Federal financial assistance, violate the agency's own regulations and the express intent of Congress in Title VI.

1. Section 80.8, entitled "Procedure for effecting compliance," provides for means such as fund cut-off proceedings and the initiation of civil suit through the Department of Justice when informal compliance fails.

In 1964 Congress proclaimed, in Title VI, that no person shall be subjected to discrimination under any program or activity which receives financial assistance from the Federal government. 42 U.S.C. § 2000d. Congress then charged the various governmental departments and agencies responsible for dispersing Federal funds with the duty to effectuate this mandate. 42 U.S.C. § 2000d–1. The intent of Congress is quite clear: to root out discrimination by cutting-off Federal funds to those activities which continue to discriminate contrary to the mandate of Title VI. In this light, ". . . Congress's clear statement of an affirmative enforcement duty should not be discounted." *Adams v. Richardson,* 156 U.S.App.D.C. 267, 480 F.2d 1159, 1162 (1973).

The Court is well aware of the fact that investigations take time and that administrative problems might require some delays. Defendants have stated that large investigations may take as much as a year to conclude. However, such long, protracted delays in HEW's making initial determinations of compliance or non-compliance, as we have here, are not understandable and are certainly not in accordance with HEW's statutory directive "to effectuate the provisions of section 2000d" found in Title VI § 2000d–1.

The investigations were begun, no doubt, based upon indications that discrimination might be occurring in these school districts. The long periods of delay which have now passed without a conclusion one way or the other as to whether discrimination actually exists leave open the distinct possibility that many of these school districts are discriminating and have been discriminating for as long as eight years while continuing to receive Federal funds, contrary to the expressed intent of Congress.

HEW and other departments and agencies of the government should be given a reasonable time within which to conduct investigations to determine whether school districts are in default of Title VI. However, it is the opinion of this Court that delays of one and one-half to eight years

are unreasonable and, with regard to the fourteen school districts at issue here, HEW has failed to fulfill its duties and responsibilities under the statute. To hold otherwise would be to permit the defendants to avoid their statutory duty by simply failing to conclude the investigatory process.

B. SCHOOL DISTRICTS FOUND TO BE IN VIOLATION OF TITLE VI BY HEW AND IN WHICH VOLUNTARY COMPLIANCE HAS NOT BEEN ACHIEVED AND ENFORCEMENT PROCEEDINGS HAVE NOT BEEN INITIATED.

In addition to the fourteen school districts in which investigations are still pending, there are twenty-six school districts which have been found in violation of Title VI and in which neither voluntary compliances have been achieved nor enforcement proceedings initiated. These school districts, listed in Appendix B, *infra,* were found in violation of the statute after HEW investigations, many of which were very lengthy, as long as seven years in duration, before being concluded with findings of default.

Subsequent to the findings of HEW, these school districts have been negotiating with HEW in an attempt to achieve voluntary compliance for periods of time ranging from eight months to three years in duration.

As the result of these long investigations, followed in many cases by rather long periods of time during which voluntary compliance has been sought, the twenty-six school districts at issue here have been receiving Federal funds for substantial periods of time while being in violation of Title VI. This is not what Congress intended.

The Court need only reiterate the statements made by Judge Pratt in *Adams v. Richardson,* 351 F.Supp. 636 (D.C.D.C.1972) aff'd 156 U.S.App.D.C. 267, 480 F.2d 1159 (1973). In *Adams,* a case very similar to the case presently before the Court, Judge Pratt stated:

5. The underlying thrust of the statute requires that the agency involved, i.

e., in this case HEW, attempt at the outset to secure compliance by voluntary means, if such method is reasonably possible. This course involves negotiation, and negotiation takes time. To such extent, the defendants have discretion but such discretion is not unlimited.

6. Where a substantial period of time has elapsed, during which period attempts toward voluntary compliance have been either not attempted or have been unsuccessful or have been rejected, defendants' limited discretion is ended and they have the duty to effectuate the provisions of § 2000d by either administrative determination, after a hearing on the record, that there has been a failure to comply and that the funds should be terminated, or by any other means authorized by law, such as reference to the Department of Justice. Under such circumstances, defendants cannot rely on their alleged complete discretion as justification for permitting the mandate of the statute to be unenforced. . . . (351 F.Supp. 636, 640–641).

In the twenty-six school districts here, compliance negotiations have been going on for periods of time ranging from nine months to three years without success. This being the case, the Court is of the opinion that the limited discretion of the defendants has ended and that HEW must commence to enforce the mandate of Title VI.[2]

## C. SCHOOL DISTRICTS WHICH HAVE BEEN FOUND INELIGIBLE FOR FUNDING UNDER THE EMERGENCY SCHOOL AID ACT.

The final group of school districts at issue here are six school districts which have been found ineligible for funding under the Emergency School Aid Act (ESAA) due to the existence of various discriminatory practices, Appendix C, *infra*.

HEW found that substantial civil rights violations existed in these school districts and declared that they were ineligible for funding under ESAA in the Spring of 1973. Having made these findings of discrimination, however, HEW made no attempt to initiate enforcement proceedings against these districts for non-compliance with Title VI. Instead, over the subsequent two years, HEW investigated the school districts, and in September and October of 1975, two and one-half years later, HEW notified five of the six school districts that they were in non-compliance with Title VI. The investigation by HEW of the sixth school district, Los Angeles, California, is still pending.

 It is apparent from HEW's finding that these six school districts were ineligible for ESAA funds in the Spring of 1973 that HEW was aware at that time that substantial civil rights violations existed in the districts. This being the case, it is obvious to the Court that HEW has continued to supply these discriminating school districts with Federal funds for over three years, contrary to the expressed intent of Congress. Since voluntary compliance has not been achieved in this period of time, Title VI requires that HEW now enforce the compliance of these districts by initiating enforcement proceedings or any other means authorized by law.

### JUDGMENT AND ORDER

Based on the foregoing, it is this 20th day of July, 1976,

ORDERED that plaintiffs' motion for partial summary judgment should be, and the same hereby is, granted; and it is

FURTHER ORDERED that plaintiffs are granted the following injunctive relief:

### A.

Defendants, their successors, agents and employees are directed and enjoined to, within 60 days of the date of this Order,

---

**2.** The defendants attempt to distinguish this case from *Adams* on grounds that *Adams* dealt with Southern school districts in which the Supreme Court had handed down specific directives for the dismantling of the "dual" system of schools. This argument is without mer-
it. Discrimination is discrimination no matter where it exists in the country, and HEW's affirmative enforcement duty exists in all areas of the country. Congress made no such distinction as the defendants propose anywhere in the statute.

conclude the investigations still pending in the fourteen school districts listed in Appendix A hereto and issue findings that these school districts are either in compliance or non-compliance with Title VI.

And defendants, their successors, agents and employees are further directed and enjoined to, within 120 days of the date of this Order, commence enforcement proceedings by administrative notice of hearing or any other means authorized by law against each of the school districts listed in Appendix A hereto, unless defendants make an administrative determination of compliance by the school district.

### B.

Defendants, their successors, agents and employees are directed and enjoined to, within 60 days of the date of this Order, commence enforcement proceedings by administrative notice of hearing or any other means authorized by law against each of the school districts which have been found by the defendants to be in non-compliance with Title VI and which are listed in Appendix B hereto, unless defendants make an administrative determination of compliance by the school district.

### C.

Defendants, their successors, agents and employees are directed and enjoined to, within sixty days of the date of this Order, commence enforcement proceedings by administrative notice of hearing or any other means authorized by law against the six school districts listed in Appendix C hereto, which were found to be ineligible for funding under the Emergency School Aid Act due to substantial civil rights violations, unless defendants make an administrative determination of compliance by the school district.

### APPENDIX A

#### SCHOOL DISTRICTS UNDER INVESTIGATION FOR POSSIBLE VIOLATIONS OF TITLE VI

| School District | Review Initiated |
|---|---|
| 1. Tucson District #1 (Arizona) | July 1968 |
| 2. Ecorse Public Schools (Michigan) | February 1969 |
| 3. River Rouge School District (Michigan) | February 1969 |
| 4. Joliet Public Schools (Illinois) | April 1969 |
| 5. Maywood (Illinois) | June 1969 |
| 6. Hartford (Connecticut) | November 1969 |
| 7. Pomona Unified (California) | November 1970 |
| 8. Bemidji (Minnesota) | December 1972 |
| 9. Cloquet (Minnesota) | December 1972 |
| 10. Deer River (Minnesota) | December 1972 |
| 11. Detroit Lakes (Minnesota) | December 1972 |
| 12. Sweetwater Union High School District (California) | June 1974 |
| 13. New York (New York) | September 1974 |
| 14. Des Moines Public Schools (Iowa) | January 1975 |

### APPENDIX B

#### SCHOOL DISTRICTS FOUND TO BE IN VIOLATION OF TITLE VI BY HEW AND IN WHICH VOLUNTARY COMPLIANCE HAS NOT BEEN ACHIEVED AND IN WHICH ENFORCEMENT PROCEEDINGS HAVE NOT BEEN INITIATED

| School District | Review Initiated | Violation Noticed |
|---|---|---|
| 1. Fresno City Unified (Cal.) | May 1968 | March 1973 |
| 2. Cahokia (Ill.) | June 1968 | Sept. 1975 |

| School District | Review Initiated | Violation Noticed |
|---|---|---|
| 3. Saginaw Township Community Schools (Mich.) | July 1968 | Sept. 1975 |
| 4. Omaha (Nebraska) | July 1968 | June 1975 (by decision of the Court) |
| 5. Fort Wayne (Indiana) | August 1968 | Nov. 1975 |
| 6. Flint (Michigan) | Sept. 1968 | Aug. 1975 |
| 7. Passaic Elementary (N.J.) | March 1969 | Aug. 1975 |
| 8. Springfield City (Ohio) | May 1969 | Sept. 1975 |
| 9. Perth Amboy (N.J.) | June 1969 | Aug. 1975 |
| 10. Lima (Ohio) | July 1969 | Sept. 1975 |
| 11. South Bend Community School Corporation (Indiana) | Oct. 1969 | Oct. 1975 |
| 12. Utica City School District (N.Y.) | March 1970 | July 1975 |
| 13. Lackawanna (N.Y.) | April 1970 | July 1975 |
| 14. Colorado Springs #11 (Colo.) | June 1970 | June 1975 |
| 15. Delano Joint Union Elementary School District (California) | Sept. 1970 | July 1974 |
| 16. Hoboken (N.J.) | Jan. 1971 | June 1975 |
| 17. Watsonville (California) | Jan. 1973 | March 1975 |
| 18. Cassia County Joint School District #151 (Idaho) | Oct. 1973 | Dec. 1974 |
| 19. Ontario (Oregon) | May 1974 | Sept. 1975 |
| 20. White Swan (Washington) | May 1974 | Oct. 1975 |
| 21. Desert Sands Unified School District (California) | July 1974 | Sept. 1975 |
| 22. Dayton (Oregon) | Sept. 1974 | April 1974 |
| 23. Sunnyside (Washington) | Oct. 1974 | May 1975 |
| 24. New Bedford (Mass.) | Dec. 1974 | July 1975 |
| 25. Grandview (Washington) | Dec. 1974 | Sept. 1975 |
| 26. New Britain (Conn.) | Jan. 1975 | Feb. 1975 |

## APPENDIX C

### SCHOOL DISTRICTS WHICH HAVE BEEN FOUND INELIGIBLE FOR FUNDING UNDER THE EMERGENCY SCHOOL AID ACT

| School District | Found Ineligible For ESAA | Notice of Title VI Violation |
|---|---|---|
| 1. Los Angeles (Cal.) | Spring 1973 | review pending |
| 2. Rochester (N.Y.) | Spring 1973 | Sept. 1975 |
| 3. Richmond (Cal.) | Spring 1973 | Sept. 1975 |
| 4. Chicago (Ill.) | Spring 1973 | Oct. 1975 |
| 5. Jeffersonville (Ind.) | Spring 1973 | Sept. 1975 |
| 6. Princeton (Ohio) | Spring 1973 | Sept. 1975 |