**NOT FOR PUBLICATION**



UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARIA GARCIA; et al., | No. 14-15494 |
| Plaintiffs - Appellants, | D.C. No. 3:13-cv-03939-WHO |
| v. | MEMORANDUM* |
| GINA MCCARTHY, in her official capacity as Administrator of the U.S. Environmental Protection Agency; et al., | |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick III, District Judge, Presiding

Argued and Submitted April 15, 2016
San Francisco, California

Before: NOONAN, BEA, and CHRISTEN, Circuit Judges.

In June of 1999, parents of Latino school children filed an administrative

complaint with the Environmental Protection Agency ("EPA") pursuant to its

regulations implementing Title VI of the Civil Rights Act of 1964 ("Title VI" or "the

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Act") alleging that the California Department of Pesticide Regulation ("CDPR")—a recipient of federal funds—authorized the use of methyl bromide and other pesticides in a fashion that had a disproportionately harmful effect on Latino school children in violation of Title VI. *See Angelita C. v. Cal. Dep't of Pesticide Regulation*, EPA File No. 16R–99–R9. EPA investigated the complaint, made a preliminary finding of a prima facie violation of Title VI, and began negotiations with CDPR. Twelve years later, in August of 2011, EPA settled the *Angelita C.* case by entering into a voluntary compliance agreement with CDPR, and dismissed the complaint. The complainants were never informed of the status of their complaint in the twelve years between the time it was accepted for investigation and when it was dismissed. EPA denied complainants' requests to reopen the settlement agreement.

In August 2013, plaintiffs, "parents of children who attended, currently attend, or will attend schools in Oxnard, California (Ventura County) and who were, are, or will be exposed to dangerous levels of toxic pesticides and fumigants," filed the present action challenging EPA's settlement with CDPR. They appeal the district court's grant of EPA's motion to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). We affirm, and hold that EPA's decision to settle, as well as the scope of its investigation, "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

# I.

While *Chaney* addressed an agency's refusal to act, courts that have had occasion to address the issue have uniformly held that an agency's decision to settle falls under the penumbra of agency inaction that has traditionally been subject to a rebuttable presumption against judicial review. *United States v. Carpenter*, 526 F.3d 1237, 1241-42 (9th Cir. 2008) (holding that decision to settle is unreviewable, but that plaintiffs could still challenge settlement for agency's failure to comply with procedural mandates); *N.Y. State Dep't of Law v. FCC*, 984 F.2d 1209, 1215 (D.C. Cir. 1993); *Balt. Gas & Elec. v. FERC*, 252 F.3d 456, 460 (D.C. Cir. 2001); *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1327 (6th Cir. 1993); *United States v. Gary*, 963 F.2d 180, 184-85 (8th Cir. 1992); *see also Greer v. Chao*, 492 F.3d 962, 966 (8th Cir. 2007) (O'Connor, J. (ret.)) (scope of investigation); *Mahoney v. U.S. Consumer Prods. Safety Comm'n*, 146 F. App'x 587, 590 (3d Cir. 2005) (unpublished). This conclusion flows from *Chaney*'s central teaching that "[t]he danger that agencies may not carry out their delegated powers with sufficient vigor does not necessarily lead to the conclusion that courts are the most appropriate body to police this aspect of their performance. That decision is in the first instance for Congress." *Chaney*, 470 U.S. at 834.

Plaintiffs' allegations that EPA acted arbitrarily and capriciously by limiting its investigation to methyl bromide exposure between 1995 and 2001, and by failing to allow for plaintiffs' participation in settlement negotiations are entirely untethered to any statutory provision or regulation implementing Title VI. None of the statutes or regulations cited by plaintiffs provide a meaningful standard for defining the limits of EPA's discretion in investigating a complaint, and none require EPA to permit plaintiffs to participate in EPA's settlement negotiations. EPA's plenary authority to either accept, reject, or refer a complaint to another federal agency, 40 C.F.R. § 7.120(d)(1)(i), must necessarily include the lesser power to determine the scope of the investigation in the event the complaint is accepted. *See Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996); *Greer*, 492 F.3d at 966.

Plaintiffs' allegation that the settlement agreement fails to secure "compliance" with Title VI as required by 40 C.F.R. § 7.115 is also without merit. Having failed to define what substantive "compliance" with Title VI requires, Congress chose not to cabin EPA's otherwise unreviewable discretion in deciding how to enforce the Act. Plaintiffs' argument that the Court may look to the Act's broad remedial language to divine a definition of "compliance" was rejected by the *Chaney* court. *Chaney*, 470 U.S. at 835-36; *see also Balt. Gas & Elec.*, 252 F.3d at 461. Plaintiffs' suggestion that

4

the Court should imbue "compliance" with meaning derived from Title VI case law is similarly flawed. *See ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987).

## II.

A decision that is committed to agency discretion by law may nonetheless be reviewable where the agency has "'consciously and expressly adopted a general policy' that is so extreme as to amount to an abdication of its statutory responsibilities." *Chaney*, 470 U.S. at 833 n.4 (citing *Adams v. Richardson*, 480 F.2d 1159, 1162 (D.C. Cir. 1973) (en banc)).[1] Plaintiffs argue that EPA's failure to comply with its own regulatory deadlines for: (1) accepting or rejecting the administrative complaint, and (2) making recommendations for voluntary compliance, qualify as such a dereliction of duty.[2]

---

[1]Plaintiffs also cite *Adams*, a D.C. Circuit opinion published a dozen years before *Chaney*, for the much broader proposition that Title VI provides "law to apply." 480 F.2d at 1162 ("The terms of Title VI are not so broad as to preclude judicial review."). However *Adams* did not purport "to resolve particular questions of compliance or noncompliance," *id.* at 1163, as plaintiffs are admittedly attempting to do here, but rather dealt with the rare circumstance where an agency's actions amounted to an utter "dereliction of duty." *Id.* In sum, *Adams* retains vitality only in the rare circumstance for which it is cited in a footnote of *Chaney*. *See e.g. Marlow v. U.S. Dep't of Educ.*, 820 F.2d 581, 583 (2d Cir. 1987). The more sweeping characterization urged by plaintiffs would essentially overrule *Chaney* and furthermore finds no basis in *Adams* itself.

[2]EPA accepted the administrative complaint on December 11, 2001—875 days past the 20-day deadline for doing so. 40 C.F.R. § 7.120(d)(1)(i). EPA made a preliminary finding of a prima facie violation on April 22, 2011, approximately twelve years beyond the 180-day deadline prescribed by its regulations. 40 C.F.R. § 7.115(c)(1).

5

However, this case centers not around the effects of EPA's delay, but rather around EPA's interpretation of its own enforcement duties under Title VI, a matter committed to its discretion by law. In *Adams*, the remedy the court provided to combat the agency's dereliction of duty was an injunction which forced the agency to act. *See Adams*, 480 F.2d at 1164 n.5. In the case at bar, the EPA has already acted. While the EPA's delay is lamentable, plaintiffs can no longer claim a judicially redressable harm resulting from it—and in any event, expressly waived any cause of action alleging an injury arising from EPA's undue delay before the district court. *See Garcia v. McCarthy*, No. 13-CV-03939-WHO, 2014 WL 187386, at *11 n.5 (N.D. Cal. Jan. 16, 2014).

**III.**

EPA's regulations establish, at most, a set of procedural guidelines it must comply with during the investigation and enforcement process. Plaintiffs do not allege a failure to comply with these procedural guidelines, nor do they point to any statutory or regulatory provision that would provide this Court with "law to apply."[3]

---

[3]Plaintiffs also argue that Section 603 of the Act provides a basis for judicial review. This section authorizes review "[i]n the case of action, not otherwise subject to judicial review, terminating or refusing to grant or to continue financial assistance upon a finding of failure to comply with any requirement imposed pursuant to section [602]." 42 U.S.C. § 2000d-2. However EPA did not terminate, refuse to grant, or refuse to continue funding to CDPR; therefore Section 603 is inapplicable here. *Marlow*, 820 F.2d at 582.

Accordingly, we are without subject matter jurisdiction to hear this case. We therefore need not reach EPA's argument that plaintiffs are also precluded from bringing this suit because they have an alternative "adequate remedy in a court." 5 U.S.C. § 704. Finally, we deny plaintiffs' motion for judicial notice.

**AFFIRMED.**