**BALTIMORE GAS AND ELECTRIC COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**Columbia Gas Transmission Corporation, et al., Intervenors.**

Nos. 00–1031, 00–1034, 00–1035, 00–1041, 00–1051 and 00–1052.

United States Court of Appeals, District of Columbia Circuit.

Argued May 4, 2001.

Decided June 15, 2001.

Peter C. Lesch argued the cause for petitioners. With him on the briefs were Jennifer N. Waters, Stanley W. Balis, John F. Harrington, Kevin J. McKeon, John K. Keane, Jr. and Paul S. Buckley. Jeffrey A. Gollomp and Lillian S. Harris entered appearances.

Beth G. Pacella, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief was Dennis Lane, Solicitor.

Marilyn L. Doria, Sanford M. Saunders, Jr., Stephen R. Melton and Kurt L. Krieger were on the brief for intervenors Columbia Gulf Transmission Corporation and Columbia Gulf Transmission Company. Robin M. Nuschler entered an appearance.

Before: EDWARDS, Chief Judge, SENTELLE and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Baltimore Gas & Electric and several other petitioners (collectively "BG&E") challenge the Federal Energy Regulatory Commission's ("FERC") agreement to settle an enforcement action against Columbia Gas Transmission and Columbia Gulf Transmission (collectively "Columbia"), two natural-gas vendors. The Commission initially had alleged that Columbia violated the Natural Gas Act, ("NGA"), 15 U.S.C. § 717 *et seq.*, by engaging in unauthorized service abandonment. Because FERC's decision to settle is committed to the agency's nonreviewable discretion under *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), we conclude that we lack jurisdiction to hear petitioners' claim.

## I. BACKGROUND

The NGA requires all vendors of natural gas in interstate commerce to obtain from FERC a certificate authorizing service at specified "certificated" levels. 15 U.S.C. § 717f(c). Having obtained such authority, a natural-gas vendor must obtain Commission approval before abandoning a portion, or all, of its certificated service. *Id.* § 717f(b).

In 1992, FERC discovered that the available capacity on one of Columbia's pipelines was lower than the level at which it had been certificated. FERC suspected that the decline in the pipeline's capacity was due to Columbia's failure to replace deteriorated compressor units. The Commission therefore ordered Columbia to show cause why it had not abandoned capacity without prior authorization. It also directed its General Counsel to begin a formal, non-public investigation into whether Columbia had unlawfully abandoned service without first obtaining FERC approval. *See Columbia Gas Transmission Corp.*, 64 FERC ¶ 61,365, 1993 WL 385590 (1993).

After a four-year investigation, FERC in August 1997 approved a settlement between Columbia and the Commission's Enforcement section. The settlement expressly declined to resolve whether Columbia had violated the Natural Gas Act. Instead Columbia, "without admitting or denying that any violation of the NGA or the Commission's regulations occurred, agree[d] to the remedies" the settlement contained. *Columbia Gas Transmission Corp.*, 80 FERC ¶ 61,220, 61,867, 1997 WL 451411 (1997). The centerpiece remedy was the requirement that Columbia conduct a 30–day "open season" to determine whether there was any demand for additional capacity on its pipeline, and to make that capacity available (up to its certificated level) to customers that desired it. *Id.* The settlement stopped short of requiring Columbia to pay money damages to customers that may have incurred higher costs as a result of the decline in its pipeline's capacity.

In September 1997, BG&E, one of Columbia's customers, moved to intervene in the administrative proceedings, and also petitioned for rehearing. BG&E argued both that FERC should not have settled with Columbia without submitting the agreement's terms to public notice and comment, and that the 30–day open season was inadequate to remedy the damages it had suffered from Columbia's capacity decline.

In December 1998, FERC permitted BG&E to intervene but denied its request for rehearing. *See Columbia Gas Transmission Corp.,* 85 FERC ¶ 61,437, 1998 WL 894921 (1998). The Commission explained that it was entitled to settle without notice and comment because the settlement was reached in the course of an agency investigation, and third parties have no right to participate in investigations. Because the investigation had now concluded, and because of BG&E's interests, FERC granted its motion to intervene. However, the Commission declined BG&E's invitation to reconsider its decision on rehearing. FERC cited its broad discretion to impose sanctions, which "includes the discretion not to order remedies for past violations in appropriate circumstances." *Id.* at 62,642. In particular, FERC explained that monetary relief was unwarranted because the magnitude of BG&E's asserted injuries was speculative, and because of Columbia's poor financial condition (it had been in bankruptcy from 1991 to 1995). *Id.* at 62,642–43.

Later that month BG&E filed another motion for rehearing. BG&E again complained that FERC had unlawfully excluded it from the investigation of Columbia, and that FERC was required to award it monetary relief for the losses it suffered. In December 1999, the Commission again denied rehearing. FERC explained that BG&E had no right to participate in its investigation of Columbia. FERC further claimed that its decision to proceed against Columbia through a settlement was "well within [its] discretion." And money damages against Columbia were unwarranted because calculating them would require "an undetermined expenditure of Commission ... resources" that FERC preferred to devote to "its current regulatory pro-

grams and initiatives." *Columbia Gas Transmission Corp.,* 89 FERC ¶ 61,325, 61,992, 1999 WL 1247077 (1999).

BG&E then filed a petition for review with this Court. It maintains that FERC abused its discretion by approving the Columbia settlement without first giving BG&E an opportunity to participate in the proceedings. BG&E further argues that the Commission abused its discretion by remedying Columbia's assertedly unlawful conduct with a prospective open season, and not with money damages.[1] Intervenor Columbia moved to dismiss BG&E's petition. FERC and Columbia claim that this Court lacks jurisdiction to consider FERC's decision to settle, which is committed to the agency's nonreviewable discretion pursuant to *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). In a similar vein, they argue that, since this Court has no power to issue an order that could redress BG&E's claimed injury, BG&E lacks standing.

## II. DISCUSSION

■ The Administrative Procedure Act ("APA") both authorizes and limits judicial scrutiny of the actions of administrative agencies. While there is a strong presumption of reviewability under the APA, *Abbott Labs. v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), that statute expressly provides that no judicial review is available of an "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The ban on judicial review of actions "committed to agency discretion by law" is jurisdictional. *See, e.g., Fort Sumter Tours, Inc. v. Babbitt,* 202 F.3d 349, 357 (D.C.Cir.2000) (explaining that "the nonreviewability of a similar kind of agency decision is not sim-

---

1. In a related case before this Court, No. 00–1138, BG&E argued that FERC unlawfully approved a later request by Columbia to in-

crease the certificated capacity on its natural-gas pipeline. We rejected that claim in an order dated May 14, 2001.

ply a question of deference to agency discretion, but of the absence of jurisdiction"). That is, Congress has not given the courts the power to hear challenges to an agency's exercise of the discretion with which Congress has entrusted it.

In *Heckler v. Chaney*, the Supreme Court announced one specific application of § 701(a)(2)'s denial of jurisdiction. *Chaney* sets forth the general rule that an agency's decision not to exercise its enforcement authority, or to exercise it in a particular way, is committed to its absolute discretion. Such matters are not subject to judicial review. 470 U.S. at 831, 105 S.Ct. 1649; *see also American Gas Ass'n v. FERC*, 912 F.2d 1496, 1505 (D.C.Cir. 1990) (remarking that "nonenforcement decisions are ordinarily unreviewable by virtue of . . . the Administrative Procedure Act"). This Court has held that the *Chaney* presumption of nonreviewability extends not just to a decision whether to bring an enforcement action, but to a decision to settle. *New York State Dep't of Law v. FCC*, 984 F.2d 1209, 1214 (D.C.Cir. 1993) (concluding that "an agency's decision to settle or dismiss an enforcement action is nonreviewable under *Heckler v. Chaney*").

The *Chaney* Court identified three reasons why agency enforcement decisions generally are nonreviewable. First, an agency's decision not to enforce "often involves a complicated balancing of a number of factors which are peculiarly within its expertise," including the allocation of agency resources and the likelihood of success. *Chaney*, 470 U.S. at 831, 105 S.Ct. 1649. Second, an agency's refusal to act generally does not involve the exercise of "*coercive* power over an individual's liberty or property rights, and thus does not infringe upon areas that courts often are called upon to protect." *Id.* at 832, 105 S.Ct. 1649. Third, and perhaps most importantly, an agency's decision not

to enforce resembles a prosecutor's constitutional prerogative not to indict—"a decision which has long been regarded as the special province of the Executive Branch"—and so is entitled to similar deference. *Id.*

Indeed, *Chaney*'s recognition that the courts must not require agencies to initiate enforcement actions may well be a requirement of the separation of powers commanded by our Constitution. The power to take care that the laws be faithfully executed is entrusted to the executive branch—and only to the executive branch. *See* U.S. CONST. art. II, § 3. One aspect of that power is the prerogative to decline to enforce a law, or to enforce a law in a particular way. *See, e.g., Hotel and Rest. Employees Union v. Smith*, 846 F.2d 1499, 1519 (D.C.Cir.1988) (en banc) (Silberman, J., separate opinion) ("The extra statutory decision to withhold enforcement is an exercise of the Executive Branch's discretion to decide whether to prosecute a case that flows from the Constitution's admonition that that Branch 'take Care that the Laws be faithfully executed.' U.S. CONST. art. II, § 3."). When the judiciary orders an executive agency to enforce the law it risks arrogating to itself a power that the Constitution commits to the executive branch.

This is not, of course, to suggest that the Congress may not restrict an executive agency's enforcement discretion. Indeed, as we discuss below, the *Chaney* Court itself recognized that the presumption of nonreviewability may be overcome by congressional limitations. Unlike a judicial command to initiate an enforcement action, Congress's authority to impose discretion-curtailing limitations is fully consistent with the executive's power to take care that the laws be faithfully executed. Such restrictions are simply an instance of lawmaking, a power committed to Congress by the Constitution. *See* U.S. CONST. art.

I, § 1. The executive, in turn, is charged with enforcing the law as it has been defined by the legislature.

■ The present case falls squarely within the *Chaney* presumption. In 1993, FERC began an investigation of Columbia's alleged service abandonment. *Columbia Gas Transmission Corp.*, 64 FERC ¶ 61,365, 1993 WL 385590 (1993). Four years later, the Commission announced that it would not prosecute an enforcement action against Columbia, but rather that the parties had agreed to settle. *Columbia Gas Transmission Corp.*, 80 FERC ¶ 61,220, 1997 WL 451411 (1997). FERC's decision to settle with Columbia, and its consequent decision not to see its enforcement action through to fruition, is a paradigmatic instance of an agency exercising its presumptively nonreviewable enforcement discretion. This Court recognized as much in *New York State Department of Law v. FCC*, 984 F.2d 1209 (D.C.Cir.1993), where we confronted a strikingly similar fact pattern. In that case, the FCC issued a show-cause order in an enforcement proceeding and then, without any public notice, agreed to settle with the companies it was investigating. A group of third parties objected to the FCC's settlement, and sought to force the Commission to reopen the proceedings. We rejected their suit, finding that the FCC's decision to settle was "a legitimate exercise of that agency's enforcement discretion" and hence was presumptively nonreviewable under *Chaney*. *Id.* at 1215. Just so here.

Of course, *Chaney* established only a presumption, not a categorical rule. 470 U.S. at 832, 105 S.Ct. 1649 (explaining that an agency's enforcement "decision is only presumptively unreviewable"); *see also Block v. SEC*, 50 F.3d 1078, 1082 (D.C.Cir. 1995) ("The presumption against judicial review in *Chaney* is not irrebuttable."). The Supreme Court went on to identify three circumstances in which the presumption of nonreviewability may be overcome: (1) where "the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers"; (2) where the agency refuses "to institute proceedings based solely on the belief that it lacks jurisdiction"; and (3) where the agency "has conspicuously and expressly adopted a general policy that is so extreme as to amount to an abdication of its statutory responsibilities." *Chaney*, 470 U.S. at 833 & n. 4, 105 S.Ct. 1649 (citation and internal quotation marks omitted).[2]

None of those three circumstances is presented here. First, although this Court has recognized that the Commission's discretion is "at [its] zenith" when enforcing the Natural Gas Act, *Niagara Mohawk Power Corp. v. FPC*, 379 F.2d 153, 159 (D.C.Cir.1967), we have not yet had occasion to hold that the NGA—the "substantive statute" here—lacks guidelines against which to measure FERC's exercise of its enforcement discretion. We do so now. At every turn the NGA confirms that FERC's decision how, or whether, to enforce that statute is entirely discretionary. Nowhere does the act place an affirmative obligation on FERC to initiate an enforcement action, nor does it impose limitations on FERC's discretion to settle such an action. "Certainly the statute does not lay out any circumstances in which the agency is required to undertake or to continue an enforcement action." *New York State*, 984 F.2d at 1215.

---

2. In *Chaney*, the Court endorsed only the first of these three exceptions but noted the possibility of the other two, "express[ing] no opinion on whether such decisions would be unreviewable" but "not[ing] that in those sit-

uations the statute conferring authority on the agency might indicate that such decisions were not 'committed to agency discretion.'" 470 U.S. at 833 n. 4, 105 S.Ct. 1649.

The closest approximation of a guideline BG&E identifies is what it describes as the Commission's "affirmative responsibility to protect consumer interests." Reply Brief of Petitioners at 7 (citing 15 U.S.C. §§ 717c, 717f). This is not sufficient. A recitation of the boilerplate truism that FERC must advance "consumer interests"—which phrase appears nowhere in the Natural Gas Act—hardly amounts to a discretion-restricting guideline. In addition, none of the cited NGA provisions relate specifically to enforcement. They instead impose restrictions on the primary conduct of both FERC and certain natural gas companies. Granted these provisions deny FERC the discretion to, say, permit natural gas companies to charge unreasonable rates, 15 U.S.C. § 717c(a), or permit companies to distribute natural gas without obtaining a certificate of public convenience and necessity, *id.* § 717f(c). But they are utterly silent on the manner in which the Commission is to proceed against a particular transgressor.

The NGA's lack of standards by itself is fatal to BG&E's claim. But the Natural Gas Act goes even further, and expressly confirms the breadth of the Commission's enforcement discretion. The NGA states that FERC "*may in its discretion* bring an action" against a violator of the act. *Id.* § 717s(a) (emphasis added). It also provides that the Commission "*may* investigate" any possible violations. *Id.* § 717m(a) (emphasis added). FERC's regulations contain equally discretionary language: the Commission "*may* initiate administrative proceedings . . . *or take other appropriate action.*" 18 C.F.R. § 1b.7 (emphasis added). If Congress had intended to cabin FERC's enforcement discretion, it could have used obligatory terms such as "must," "shall," and "will," not the wholly precatory language it employed in the act.

The other two *Chaney* circumstances are even more easily dismissed. FERC's decision to settle with Columbia did not proceed from the Commission's mistaken belief that it "lack[ed] jurisdiction" to bring an enforcement action. 470 U.S. at 833 n. 4, 105 S.Ct. 1649. On the contrary, FERC initiated an enforcement action in 1993 and then decided not to pursue it further.

Similarly, we cannot say that settlement is an "extreme" policy that amounts to "an abdication of [FERC's] statutory responsibilities." *Id.* Like other federal agencies, FERC routinely approves settlement agreements in enforcement proceedings. *See, e.g., H. Bruce Cox,* 90 FERC ¶ 61,239, 2000 WL 280788 (2000); *Transcontinental Gas Pipe Line Corp.,* 79 FERC ¶ 61,008, 1997 WL 158345 (1997). In this case the Commission decided to settle with Columbia for reasons that the *Chaney* Court expressly held to be legitimate. *Compare Chaney,* 470 U.S. at 831, 105 S.Ct. 1649 (recognizing agencies' need to determine whether a "particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all"), *with Columbia Gas Transmission Corp.,* 85 FERC ¶ 61,437, 62,642–43, 1998 WL 894921 (1998), *and Columbia Gas Transmission Corp.,* 89 FERC ¶ 61,325, 61,992, 1999 WL 1247077 (explaining that the Commission had decided to settle, and not to award money damages, because it chose to devote its resources to current regulatory initiatives).

We conclude, therefore, that FERC's decision to settle its enforcement action against Columbia was within the agency's nonreviewable discretion. Because we have no jurisdiction under 5 U.S.C. § 701(a)(2) as illuminated by *Heckler v. Chaney,* we need not reach FERC's alternative argument that BG&E lacks stand-

ing. Nor need we evaluate the substantive reasonableness of FERC's decision to settle.

### III. CONCLUSION

The Administrative Procedure Act provides that no judicial review may be had of agency actions that are "committed to agency discretion by law." *Heckler v. Chaney* clarifies that one type of presumptively nonreviewable action is an agency's decision to enforce the law in a particular way. Because FERC had this nonreviewable discretion to settle its enforcement action against Columbia, we lack jurisdiction to consider BG&E's challenge to it. BG&E's petition for review therefore is dismissed.