# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued April 1, 2025          Decided September 19, 2025

No. 23-1333

EL PUENTE DE WILLIAMSBURG, INC.-ENLACE LATINO DE
ACCIÓN CLIMÁTICA, INC., ET AL.,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

NFENERGÍA LLC,
INTERVENOR

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*Benjamin P. Chagnon* argued the cause for petitioners. On the briefs were *Raghu Murthy*, *Jennifer Cassel*, and *Jordan Luebkemann*.

*J. Houston Shaner*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *David L. Morenoff*, Acting General Counsel, and *Robert H. Solomon*, Solicitor.

*Jeremy C. Marwell* argued the cause for intervenor in support of respondent. With him on the brief were *Matthew Reinhard* and *John S. Decker*.

Before: KATSAS and GARCIA, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*: NFEnergía LLC operates a facility to import natural gas in San Juan, Puerto Rico. After a series of hurricanes battered Puerto Rico, NFEnergía sought authorization to expand its facility by constructing and operating a new pipeline running to an emergency generator operated by the Army Corps of Engineers. The Federal Energy Regulatory Commission declared that it would take no action to prevent construction or operation pending its review of license applications for the existing facility and the new pipeline. Several environmental groups petitioned for review of the relevant orders. We hold that the orders reflect an unreviewable exercise of enforcement discretion.

I

A

Section 3 of the Natural Gas Act (NGA) makes it unlawful to import or export natural gas without prior authorization from FERC. 15 U.S.C. § 717b(a); *see Big Bend Conservation All. v. FERC*, 896 F.3d 418, 420 (D.C. Cir. 2018). We have construed section 3 also to require prior authorization to construct and operate import or export facilities. *See Distrigas Corp. v. Fed. Power Comm'n*, 495 F.2d 1057, 1064 (D.C. Cir. 1974). Congress later confirmed FERC's "exclusive authority" to license the construction and operation of any "LNG

terminal"—a kind of facility used to import or export liquid natural gas. 15 U.S.C. § 717b(e)(1); *see id.* § 717a(11) (statutory definition).

FERC may enforce this licensing regime in various ways. Section 20 of the NGA provides that, if a person is violating the statute, FERC "may in its discretion" bring an action for injunctive relief in federal district court. 15 U.S.C. § 717s(a). Section 22 authorizes FERC to assess civil penalties for NGA violations. *Id.* § 717t-1.

B

Puerto Rico has experienced various crises over the last decade. In 2017, it became unable to service its debt. *Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC*, 590 U.S. 448, 453–54 (2020). A federal oversight board placed its main energy instrumentality (the Puerto Rico Electric Power Authority, or PREPA) into special bankruptcy proceedings. *Id.* at 455. In September 2017, Hurricanes Irma and Maria devastated the island's electricity grid and caused an 11-month blackout—the longest in United States history. *See The Longest Blackout in U.S. History: Hurricane Maria*, U.S. Army Corps of Eng'rs, https://perma.cc/KY5N-QVW2.

To ameliorate this energy crisis, NFEnergía began importing LNG in 2020 through an onshore facility at the edge of San Juan Bay. The facility transports LNG to the adjacent San Juan Power Plant either by truck or through a 75-foot gas pipeline. NFEnergía built and operated this facility without receiving prior authorization from FERC. It contended that the facility did not meet the statutory definition of an "LNG Terminal" and that FERC therefore lacked jurisdiction over it. FERC initially agreed, but changed its mind shortly after the facility was built. In March 2021, FERC issued an order concluding that the facility was subject to its section 3

jurisdiction. *See New Fortress Energy LLC*, Order on Show Cause, 174 FERC ¶ 61,207 (2021). This Court later upheld that determination. *New Fortress Energy Inc. v. FERC*, 36 F.4th 1172 (D.C. Cir. 2022).

When FERC asserted jurisdiction over the import facility, it instructed NFEnergía to apply for a section 3 authorization. 174 FERC ¶ 61,207, P 1. However, FERC expressly declined to "require the facility to cease operating" unless and until it secured the authorization. *Id.* P 39. In explaining its view that continued operation was appropriate despite the lack of authorization, FERC stressed that the facility supplies clean energy to Puerto Rico, that the Coast Guard and the Army Corps of Engineers had already approved various aspects of the facility, and that Puerto Rican authorities had already completed an environmental review. *See id.* P 38.

After NFEnergía applied for a section 3 authorization in 2021, Hurricane Fiona hit Puerto Rico. It ravaged the still-recovering grid and left 1.5 million households without power. The President declared a major disaster, and the Federal Emergency Management Agency established the Puerto Rico Power Stabilization Task Force, which convened representatives from PREPA and four federal agencies to improve the island's capacity to generate electricity. The Task Force determined that emergency generators would be necessary to stabilize the grid during long-term repairs. The Army Corps of Engineers was charged with operating the generators. It enlisted NFEnergía to supply the necessary fuel.

NFEnergía determined that meeting this obligation would require an additional 220-foot pipeline between the existing import facility and the temporary generators.

5

C

In July 2023, NFEnergía applied for a section 3 authorization to build the new pipeline. It urged that the pipeline was necessary to meet Puerto Rico's energy needs during the rapidly approaching hurricane season and to avoid imminent rolling blackouts. The Army Corps informed FERC that it was unaware of any alternative source of fuel.

After soliciting comments, FERC issued the order at issue. It disclaimed any "explicit statutory authority" to authorize the new pipeline while still deciding whether to authorize the larger import facility. *NFEnergía LLC*, Order on Request for Section 3 Authorization, 184 FERC ¶ 61,061, P 3. But FERC also stated that it would "not take action to prevent the immediate construction and operation" of the pipeline. *Id.* FERC noted the "involvement of … multiple other federal agencies in an effort to protect the Puerto Rican electric grid during the upcoming heart of the hurricane season." *Id.* And it promised to "conduct a complete examination of the merits" of the pipeline "as part of the pending proceeding related to the authorization of the LNG terminal." *Id.* NFEnergía then constructed and began operating the pipeline.

FERC denied rehearing. The Commission clarified that it viewed NFEnergía's request to build and operate the pipeline as "an application for an amendment to its pending section 3 authorization application for its LNG terminal." *NFEnergía LLC*, Order Addressing Arguments Raised on Rehearing, 186 FERC ¶ 61,078, P 9. And FERC reiterated that it would continue reviewing the two together. *Id.* Since then, FERC has continued to process NFEnergía's section 3 application for the facility and the new pipeline in a consolidated proceeding.

Various environmental organizations petitioned for review of these orders. NFEnergía intervened in support of FERC. We have jurisdiction under 15 U.S.C. § 717r(b).

II

Petitioners argue that the orders under review effectively authorized construction and operation of the pipeline without addressing substantive requirements imposed by the NGA or performing the environmental review required by the National Environmental Policy Act. FERC responds that the orders merely reflect an unreviewable exercise of enforcement discretion. We agree with FERC.

The Administrative Procedure Act exempts from judicial review agency actions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). In *Heckler v. Chaney*, 470 U.S. 821 (1985), the Supreme Court held that agency decisions declining to take enforcement action presumptively fall within this provision. *Id.* at 828–34. Several considerations support the presumption. First, a decision not to enforce often involves balancing considerations within the agency's expertise, such as whether enforcement would involve a wise use of scarce agency resources. *Id.* at 831. Second, a refusal to enforce does not involve the exercise of "*coercive* power" over individuals. *Id.* at 832. Third, such a decision resembles a prosecutor's decision not to indict, "which has long been regarded as the special province of the Executive Branch." *Id.*

The orders under review reflect an exercise of enforcement discretion. FERC stated that it "will not take action to prevent the immediate construction and operation of the proposed facilities." 184 FERC ¶ 61,061, P 3. On its face, that statement did not *authorize* construction and operation of the pipeline, thereby making those activities *lawful* under section 3. Instead, the agency merely announced that it would not seek "to

prevent" NFEnergía from building and operating the pipeline, as it could by filing an injunctive action under section 20. Moreover, FERC confirmed that a section 3 authorization proceeding remained pending for both the new pipeline and the larger import facility. *See id.*; 186 FERC ¶ 61,078, P 9. And it gave prudential reasons for forgoing immediate enforcement—the urgent need to "stabilize Puerto Rico's electrical grid in preparation for the 2023 hurricane season" and the involvement of multiple federal and commonwealth agencies in ensuring safe operation of the pipeline during the emergency. 184 FERC ¶ 61,061, P 3. Given all this, we reject petitioners' characterization of the orders as a *de facto* authorization.

We also reject petitioners' contention that the NGA rebuts the presumption that agency decisions not to enforce a statute are unreviewable. In *Chaney*, the Supreme Court explained that this presumption "may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." 470 U.S. at 833. But the NGA provides no such guidelines. Section 20 simply provides that FERC "may in its discretion" bring an enforcement action in district court. 15 U.S.C. § 717s(a). Likewise, section 22 simply provides that a person violating the NGA is "subject to a civil penalty," while leaving to FERC the decision whether to assess it. *Id.* § 717t-1(a). Given such language, we have held that the NGA does not rebut *Chaney*'s presumption. *Balt. Gas & Elec. Co. v. FERC*, 252 F.3d 456, 460–61 (D.C. Cir. 2001). In doing so, we explained that the NGA "lacks guidelines against which to measure FERC's exercise of its enforcement discretion" and "does not lay out any circumstances in which the agency is required to undertake or to continue an enforcement action." *Id.* at 460 (cleaned up). To the contrary, "[a]t every turn the NGA confirms that FERC's decision how, or whether, to enforce … is entirely discretionary." *Id.*

Finally, petitioners worry that FERC's approach here portends what they call a "build first, review later" regime for pipelines. That concern is overstated. For one thing, FERC stressed the grave emergency supporting its non-enforcement decision in this case. And absent such an emergency, we think it unlikely that companies would undertake to build pipelines without section 3 authorization, based only on non-enforcement decisions that FERC would have discretion to reverse later. Finally, if FERC were to adopt a general policy refusing to enforce section 3, judicial review might be available based on the agency's wholesale "abdication of its statutory responsibilities." *Chaney*, 470 U.S. at 833 n.4. Nothing remotely like that is present here.

## III

Because the orders at issue reflect an unreviewable exercise of enforcement discretion, we deny the petition for review.

*So ordered.*