Jeffrey J. PROSSER, et al., Plaintiffs,

v.

FEDERAL AGRICULTURAL MORT-
GAGE CORPORATION, et al.,
Defendants.

Civil Action No. 08–0687 (JR).

United States District Court,
District of Columbia.

Jan. 14, 2009.

Jeffrey J. Prosser, St. Croix, VI, pro se.

John P. Raynor, Omaha, NE, pro se.

## *MEMORANDUM*

JAMES ROBERTSON, District Judge.

The claim of *pro se* plaintiffs Jeffery Prosser and John Raynor[1] against the Federal Agricultural Mortgage Corporation (Farmer Mac) and the U.S. Department of Agriculture (USDA) is essentially that their financial support of the National Rural Utilities Cooperative Finance Corporation (CFC) is unlawful because it keeps CFC afloat so that CFC is not forced through financial necessity to do business with the plaintiffs and accommodate their business needs. CFC was originally named as a defendant, but plaintiffs conceded its motion to dismiss. Dkt. 14. Farmer Mac and USDA now both move to dismiss for want of subject matter jurisdiction. Those motions will be granted because, although the complaint is long on conspiracy theories and painstaking (if unilluminating) detail, it is fatally short on allegations of fact that would establish any of the required three elements of plaintiffs' standing.[2]

### Background

On a motion to dismiss under Rule 12(b)(1), I must consider the facts in the light most favorable to the plaintiff, but I may appropriately give allegations of fact "closer scrutiny" than under a Rule 12(b)(6) motion. *See Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C.Cir.2003); *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers*, 539 F.Supp.2d 331, 337 (D.D.C.2008). I may also "look beyond the allegations contained in the complaint." *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253–54 (D.C.Cir.2005).

Defendant Farmer Mac is a public, federally chartered corporation created to establish a secondary market for agricultural real estate and rural housing mortgage loans and to increase the availability of financing at stable interest rates for American farmers and rural homeowners. Cmpl. at 4, 9. In order to comply with its mandate and fund its operations, Farmer Mac can issue debt and invest some of the capital it raises. FM MTD at 4–5. Defendant USDA is a government agency which, among other things, is authorized by the Rural Electrification Act of 1936, as

---

1. Although the complaint was filed *pro se,* Raynor is an attorney.

2. This disposition under Rule 12(b)(1) makes it unnecessary to address the alternative Rule 12(b)(6) ground of the defendants' motion.

amended (REDLG) § 313A to guarantee the repayment of bonds issued by certain not-for-profit lenders if the proceeds of the bonds are used to make loans for electrification or telephone purposes. USDA MTD at 2.

CFC is a private not-for-profit cooperative association which provides its members with financing to supplement the USDA's loan programs. CFC MTD at 2. Rural Telephone Finance Cooperative (RTFC), which has never been a party to this action, is a member of CFC and is also a private not-for-profit cooperative association which provides financing to its rural telecommunications members. CFC MTD at 2–3. CFC is the sole lender to RTFC and manages its affairs under a management agreement. *Id.*

Prosser was the beneficial owner of Innovative Communication Corporation (ICC) and Virgin Islands Telephone Corporation (Vitelco). Cmpl. at 23. Raynor was a board member of those companies. *Id.* Vitelco was a member of RTFC and ICC was an associate member of RTFC. Cmpl. at 23–24.

The complaint alleges—and again, these allegations are taken as true for purposes of the pending motion—that CFC uses RTFC as a "puppet" corporation; that, through a series of complicated maneuvers, it redirects RTFC's profits from loans made to the telecommunications sector to subsidize its electric sector members and to "cover up losses" on electric sector loans, Cmpl. at 5–6, Pl. USDA Opp. at 12–13; and that all this was "obscured from the public by suspect accounting techniques." Cmpl. at 8–15.

CFC (the complaint goes on to allege) is also bankrupt or virtually bankrupt. Cmpl. at 16. Farmer Mac and the USDA "bailed out" CFC by purchasing billions of dollars of its securities for greater than their market value and guaranteeing bil-

lions in loans to CFC made by the Federal Financing Bank, respectively. Cmpl. at 17–23. Both the USDA and Farmer Mac knew or should have known about CFC's improper use of RTFC's profits and its dire financial straits because they were evident from publicly filed documents. *Id.* The USDA and Farmer Mac ignored these problems, in part because of "cronyism." Cmpl. at 20–23.

ICC discovered CFC's use of RTFC's profits and threatened to bring a "derivative suit" against RTFC. Pl. FM Opp. at 20–22. In retaliation, RTFC foreclosed on an ICC loan. *Id.* RTFC had been financially damaged by CFC's practice of taking RTFC's profits for its own use, but the "bailout" of CFC by Farmer Mac and the USDA allowed CFC to fund RTFC's pursuit of foreclosure without accommodating ICC's needs. *Id.* As a result of the foreclosure litigation, ICC could not afford to and stopped making payments on loans held by RTFC with the result that ICC's parent companies and ICC itself went into bankruptcy, and ICC fired the plaintiffs, *id.*

CFC's use of RTFC's profits and the "bailout" continue today, and without them CFC would not be financially viable. *Id.* Prosser's recent attempts to conduct business with RTFC and CFC have been rebuffed. Pl. USDA Opp. At 15.

The plaintiffs assert that Farmer Mac's purchase of CFC loans violated various statutory and regulatory provisions, and that the USDA's acts, although not "patently illegal," constituted unwise investments that were contrary to the spirit of REDLG and made because of cronyism. PL. FM Opp. at 5–20; Pl USDA Opp. at 2. The plaintiffs also assert that, by bailing out CFC, Farmer Mac and the USDA aided and abetted what they allege was CFC's fraudulent use of RTFC's profits

and coverup of its financial difficulties. Pl. FM Opp. at 17.

## Analysis

■■■ "Article III standing is a prerequisite to federal court jurisdiction, and ... petitioners carry the burden of establishing their standing." *Am. Library Ass'n v. F.C.C.*, 401 F.3d 489, 493 (D.C.Cir.2005). To establish standing, a plaintiff:

> First, must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* Because these plaintiffs seek injunctive relief, they must also allege that they are "likely to suffer future injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

### 1. *Injury*

■■■ The injury plaintiffs allege "must affect [them] in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n. 1, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The assertion of a generalized injury or of a right to force the government to act in accordance with the law will not support standing, *Allen v. Wright*, 468 U.S. 737, 753–755, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), nor will merely complaining about the expenditure of taxpayer dollars, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 343, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006). Plaintiffs have no standing to bring a case on behalf of third parties who are strangers to this suit, such as ICC, Vitelco, the members of RTFC of CFC, or others who may own securities issued by the companies that are the subject of this suit.[3] *See Powers v. Ohio*, 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

It is difficult to pin down the exact injuries, personal to them, of which these plaintiffs complain.[4] They make generalized allegations of harm to their "business interests and reputation" and aver that they "will continue to suffer additional irreparable harm as long as management of [CFC] is retained because of the Farmer Mac and USDA unlawful funding" Compl. at 25, 26. They do not have standing to bring claims for "hypothetical" or "conjectural" harms, *City of Los Angeles v. Lyons*, 461 U.S. at 103–104, 103 S.Ct. 1660, but they provide no facts about the alleged "business interests" and they do not say how, or among whom, their reputations have been or will be injured. They are more specific in their references to RTFC's past and continued rejection of an "offer" by Prosser that would "yield ... RTFC and Greenlight $250 Million" and

---

**3.** Plaintiffs do not allege that they currently own any investments in CFC, RTFC, ICC, Vitelco, or Farmer Mac, or any securities issued by these companies or guaranteed by the USDA. They do not allege that they have ever done business with Farmer Mac or the USDA directly, or claim any present affiliation with ICC or Vitelco, or any other member of RTFC or CFC. Nor do they satisfy the criteria for an exception to the general bar on third party standing. *Powers*, 499 U.S. at 411, 111 S.Ct. 1364; *Renal Physicians Ass'n v. U.S. Dept. of Health and Human Services*, 489 F.3d 1267, 1275–1276 (D.C.Cir.2007).

**4.** Plaintiffs' recitation of their future intent to file a Racketeer Influenced and Corrupt Organizations Act claim against CFC adds nothing to the analysis.

RTFC's general refusal to do business with Prosser, but there is no suggestion in the complaint or in their opposition to the pending motion that RTFC is under any obligation to deal with the plaintiffs. Pl. USDA Opp. at 15.

### 2. *Causal Connection*

■ Plaintiffs did lose their jobs but not, as far as can be told from the record, for any reason traceable to the conduct of which they complain. There is no allegation that the defendants control or controlled CFC or RTFC, and no claim or allegation that the defendants actually caused them direct injury at all. Their factual proposition appears to be that if the USDA and Farmer Mac had not illegally "bailed out" CFC, (1) CFC and RTFC could not have foreclosed on ICC's loans or would have been forced to accommodate ICC by cutting a deal in the subsequent litigation, and that plaintiffs would therefore have kept their jobs or otherwise not been injured, and (2) CFC would now be forced to deal with, and/or abandon its "bellicose and openly hostile attitude" towards, Prosser. Pl. FM Opp. at 20–23.

The links in this chain of causality are all contingent on speculative assumptions about the past and future acts and motives of strangers to this suit, and even about market forces. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 43, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). When "[m]ost, if not all, of the individual links in the chain [of causality] alleged by appellants depend on some allegation that cannot be easily described as true or false," such as when the "links inescapably presume certain independent action[s] of some third party not before" a court, the D.C. Circuit "routinely refuse[s] to permit such predictive assumptions to establish standing." *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 670 (D.C.Cir.1996).

### 3. *Redressability*

■ The plaintiffs provide no information as to how satisfaction of their demands would provide them with redress. "[T]o establish redressability at the pleading stage, [this Circuit] require[s] more than a bald allegation; [it] require[s] that the facts alleged be sufficient to demonstrate a substantial likelihood that the third party directly injuring the plaintiff would cease doing so as a result of the relief the plaintiff sought." *Renal Physicians Ass'n v. U.S. Dept. of Health and Human Services*, 489 F.3d 1267, 1275 (D.C.Cir.2007). The plaintiffs ask for declarations that the challenged acts are illegal and injunctive relief to prevent their continuation. Cmpl. at 27–28. But declarations would not redress any supposed past harm, and the injunctive relief would at best merely give the plaintiffs a better chance at convincing RTFC to deal with them. "[A] quest for ill-defined better odds is not close to what is required to satisfy the redressability prong of Article III." *Nat'l Wrestling Coaches Ass'n v. Dept. of Educ.*, 366 F.3d 930, 939 (D.C.Cir. 2004).

### Conclusion

■ Plaintiffs have failed sufficiently to allege any of the required three elements of standing. Without standing, there is no subject matter jurisdiction. Without subject matter jurisdiction, the complaint must be dismissed. Fed R. Civ Pro. 12(b)(1).